IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 13, 2018

**RACHRIS R. THOMAS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 11-07851      Lee V. Coffee, Judge**

———————————————————————

**No. W2017-00912-CCA-R3-PC**

———————————————————————

The Petitioner, Rachris R. Thomas, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of counsel. Following our review, we affirm the judgment of the post-conviction court denying the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Monica A. Timmerman, Bartlett, Tennessee, for the appellant, Rachris R. Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Ann Schiller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner was convicted by a Shelby County Criminal Court jury of two counts of especially aggravated kidnapping, one count of aggravated robbery, one count of attempted aggravated robbery, and one count of being a convicted felon in possession of a handgun and was sentenced by the trial court to an effective sentence of seventy years in the Department of Correction. State v. Racris Thomas, No. W2013-00851-CCA-R3-CD, 2014 WL 5465864, at *1 (Tenn. Crim. App. Oct. 27, 2014), perm. app. denied

(Tenn. Feb. 12, 2015).[1]  His convictions were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal.  Id.

Our direct appeal opinion reveals that the Petitioner's convictions stemmed from his actions on the night of April 11, 2011, when masked and armed with two guns, he approached a couple who had just returned in their vehicle to their Memphis apartment.  Id.  The Petitioner ordered the couple, Vanzelle Clark and Keshya McClinton, at gunpoint up the apartment complex stairs to their apartment, where they found that the front door lock had been broken and an Xbox 360 video game system, video games, DVDs, and televisions were missing.  Id. at *1-2.  Mr. Clark, who was walking in front of Ms. McClinton, fled out the back door of the apartment, leaving Ms. McClinton alone with the Petitioner.  Id. at *1.  The Petitioner then forced Ms. McClinton at gunpoint into the bedroom, where he ordered her to remain.  Id. at *3.

After she heard the Petitioner's voice fade away, Ms. McClinton ventured out of the bedroom and the apartment in an attempt to flee, but she was stopped by the now-unmasked Petitioner, who was at the bottom of the stairwell.  Id.  The Petitioner forced Ms. McClinton at gunpoint back into the apartment and at first ordered her to return to the bedroom.  Id.  He then changed his mind and ordered her downstairs and into the passenger seat of her vehicle.  Id.  The Petitioner got into the driver's seat of the vehicle and demanded the keys.  Id.  When Ms. McClinton told him that Mr. Clark had the keys, he ordered her out of the vehicle and to the other side of the apartment building.  Id.  Hearing the sound of approaching sirens, the Petitioner became agitated and attempted to force Ms. McClinton into a side alley.  Id.  When she resisted, he took her wallet and fled the scene.  Id.

The Petitioner became a suspect when police officers who executed a search warrant in a separate case discovered the victims' Xbox and a .38 caliber revolver, which matched the description of one of the weapons involved in the instant case, in the home of the Petitioner's girlfriend, Lori Howard.  Id. at *5.  Ms. Howard informed the officers that the items belonged to the Petitioner and that she was holding them at her home at his request.  Id.  Ms. Howard's account was corroborated by recorded jail conversations that revealed that the Petitioner "had another inmate call Ms. Howard and ask her to 'get his stuff, the Cadillac and the Xbox.'"  Id. at *6.

Both Ms. McClinton and Mr. Clark, in separate photographic lineup procedures, positively identified the Petitioner as the perpetrator.  Id. at *5.  Mr. Clark explained that

---

[1]  We note that the Petitioner's first name is spelled as "Racris" in the direct appeal opinion and in many of the motions and pleadings contained in the technical record of this case.  The Petitioner, however, spelled his name for the court reporter at the evidentiary hearing as "R-A-C-H-R-I-S."

he was able to identity the Petitioner as the perpetrator, despite the fact that he had not seen the perpetrator without a mask, because he knew the Petitioner. Id. at *6. Ms. McClinton testified at trial that she was one hundred percent certain in her identification of the Petitioner and that she would never forget what he looked like. Id. at *4. She was also adamant that Ms. Howard's adult son, Danny Howard, was not the perpetrator, testifying that the individual who robbed her was older and had a darker complexion. Id.

The Petitioner's mother and aunt both testified on the Petitioner's behalf that Ms. Howard had given the Xbox to the Petitioner. Id. at *7-8.

On October 2, 2015, the Petitioner filed a pro se petition for post-conviction relief in which he raised a claim of ineffective assistance of trial and appellate counsel. Following the appointment of post-conviction counsel, he filed an amended petition in which he alleged that trial counsel was ineffective in the following instances: by not challenging the victims' pre-trial identifications of the Petitioner as unduly suggestive; by failing to properly impeach two of the State's key witnesses; by not requesting specific jury instructions for count six of the indictment, thereby failing to preserve the issue for direct appeal; and by failing to afford the Petitioner the right to testify in his own defense. In his original petition, which was incorporated by reference, the Petitioner additionally alleged that counsel was ineffective with respect to count six, which charged him with the employment of a firearm during the commission of a dangerous felony, by not challenging the fact that the indictment failed to put him on notice of which dangerous felony he was allegedly committing during his employment of a firearm.

At the evidentiary hearing, the Petitioner testified that trial counsel was appointed to represent him after his case had been transferred to criminal court. He acknowledged that trial counsel provided a copy of discovery to him but claimed that counsel met with him only once or twice during the entire eight to nine months he represented him. The Petitioner said he was innocent of the offenses and had been framed by Ms. Howard. He explained that Ms. Howard was a drug dealer who had taken the Xbox as collateral for a drug sale and then given it to him. He stated that the gun belonged to Ms. Howard but she told the police it was his because she was a convicted felon and did not want to go to prison for possession of a weapon. The Petitioner claimed there were recorded jail telephone conversations between himself and Ms. Howard in which she acknowledged the gun was hers. He said he asked counsel to get those tapes but counsel never did. According to the Petitioner, trial counsel told him that the phone records were unobtainable because the jail only kept recorded calls for six months. However, that did not make sense to the Petitioner because the State's recorded phone calls introduced at his trial were from the first day he was arrested.

- 3 -

The Petitioner also complained that trial counsel never challenged the trial court's proposed jury instructions or the suggestive out-of-court identifications made by the victims in the case. With respect to the former, he asserted that the jury instructions, which were handed out at the beginning of the trial, prejudiced the jurors against him because it made them aware that he had a criminal background involving similar crimes. With respect to the latter, he asserted that both Ms. McClinton and Mr. Clark initially told the police that neither one had seen the perpetrator before. In addition, Ms. McClinton was unable to provide a description of the perpetrator until four or five months after the incident.

The Petitioner testified that he learned from trial counsel's investigator that the lead police officer in his case, Sergeant Shawn Hicks, had been suspended for violating department policies by informing his (Sergeant Hicks's) brother, who was the target of a drug investigation, of the name of the officer who was investigating him. The Petitioner said he wanted trial counsel to impeach Sergeant Hicks's credibility with that information, but counsel failed to do so.

The Petitioner further testified that trial counsel never challenged count six of the indictment, which charged him with the employment of a firearm during the commission of an aggravated burglary, "for failure to put [the Petitioner] on notice." The Petitioner stated that he thought trial counsel's failure to challenge count six prejudiced the outcome of his case.

The Petitioner claimed that he felt pressured by trial counsel not to testify at his trial. He said he wanted to tell the jury his side of the story, but counsel kept telling him that it would better if he did not because the State could introduce his prior criminal history if he testified. The Petitioner admitted that counsel's advice "made sense" but insisted that he still wanted to testify. The Petitioner acknowledged that the trial court questioned him in depth about his decision but denied that he told the court that he was not under any pressure when he made his decision not to testify.

On cross-examination, the Petitioner acknowledged that trial counsel cross-examined both victims about their identifications of the Petitioner. He said that the two witnesses he thought counsel failed to properly impeach were Mr. Clark and Sergeant Hicks. He grudgingly conceded that the trial court had ruled after a pretrial hearing that the information about Sergeant Hicks's background was inadmissible at trial but indicated that he thought trial counsel should have brought it up anyway. He acknowledged that he was not convicted of count six, the count of the indictment for which he faulted counsel for not requesting specific jury instructions. Finally, he also acknowledged that he told the trial court that he did not want to testify because he did not want his past criminal record introduced and that the decision had ultimately been his.

Trial counsel, who said he had been practicing criminal law for twenty years, testified that he was appointed to represent the Petitioner in April 2012 after the Petitioner asked that the Public Defender's Office be removed from representing him. He stated that he reviewed discovery with the Petitioner and discussed the evidence against him and his possible defenses. He advised the Petitioner that the State's case was strong, that he would likely be convicted at trial, and that he should accept a plea bargain if the State offered one that was agreeable to him. Trial counsel testified that the State offered a plea of twenty years at one hundred percent that would have disposed of the instant case as well as a second case involving a Class A or B felony charge. The Petitioner, however, rejected the offer on the basis that his pleading guilty would constitute a violation of his probation in a Mississippi case.

Trial counsel testified that his investigator was able to obtain Danny Howard's booking photograph and the damaging information, mentioned above, about Sergeant Hicks's background. He said their defense theory consisted of trying to show that Mr. Howard was the perpetrator. To that end, he cross-examined both victims at length about their identifications of the Petitioner and the photographic lineup procedure employed by Sergeant Hicks. He also cross-examined Sergeant Hicks regarding how he created the lineup. He did not ask Sergeant Hicks any questions about the information he had uncovered in his personnel file because the trial court had previously ruled the evidence irrelevant and inadmissible.

Trial counsel testified that he did not believe the Petitioner would make a good witness because he was not "particularly articulate." More importantly, he worried that if the Petitioner took the stand, he would discuss the details of a separate, pending aggravated robbery case, as he had the tendency to do in conversation. Trial counsel said the jury was made aware of the fact that the Petitioner had a prior aggravated robbery conviction by the trial court's instruction to the jury in connection with the convicted felon in possession of a handgun count of the indictment. He stated that he moved for a mistrial, which was denied, and later brought the issue up on direct appeal to no avail.

On cross-examination, trial counsel testified that, in addition to their court meetings, he visited the Petitioner in jail approximately five or six different times. He said he focused his appeal on the issues that he believed had the most chance of success, which were the sufficiency of the evidence and the trial court's denial of his motion for a mistrial. He stated that the portion of this court's direct appeal opinion which stated that he received the trial court's proposed jury instructions six weeks before the March 25, 2013 trial was inaccurate, as he received the instructions on the same date that the trial began. The post-conviction court then noted for the record that the instructions were given on February 12, 2013, the date that the trial began, and that March 25, 2013, was the date that the sentencing hearing was held.

In response to questions by the post-conviction court, trial counsel acknowledged that he had tried close to fifty homicide cases during his career, was capital qualified, and had recently received the honor of being designated as a "super trial lawyer in the State of Tennessee."

The post-conviction court denied the petition at the conclusion of the hearing, issuing extensive oral findings of fact and conclusions of law, followed by an extensive written order filed on April 12, 2017. Among other things, the court found that the Petitioner was not credible in his testimony about his interactions with trial counsel and was not honest with the court when he said that trial counsel prevented him from testifying. The post-conviction court noted that the Petitioner told the court at the Momon hearing that he wanted to testify but was waiving that right because he knew it would not "be good for [him]." The post-conviction court also noted that at the evidentiary hearing the Petitioner failed to produce any of the alleged recorded jail conversations that he thought trial counsel should have obtained. With respect to the Petitioner's complaint about trial counsel's not requesting specific jury instructions for count six of the indictment, the court noted that the Petitioner had not been convicted of that count. The court further referenced this court's direct appeal opinion in which we concluded that the Petitioner was not prejudiced by the trial court's having instructed the jury in count seven of the indictment of the specific felony for which the Petitioner had been convicted. Finally, the court found that trial counsel provided "excellent representation" to the Petitioner and concluded that the Petitioner failed to meet his burden of showing that he was denied effective assistance of counsel.

## ANALYSIS

The issue the Petitioner raises on appeal is "[w]hether the trial court erred in denying Petitioner post-conviction relief when it held that trial counsel was not ineffective for failing to object to preliminary jury instructions that identified the Petitioner's prior conviction?" The Petitioner argues that trial counsel "should have reviewed the preliminary jury instructions and objected pretrial to the identification of the Petitioner's previous offense." He asserts that trial counsel's failure to do so prejudiced the outcome of his trial because the jury "was allowed to know that the Petitioner had a prior conviction for the same offense." He further asserts that he would have elected to testify at trial had he known that the jury would be informed of his prior aggravated robbery conviction.

The State responds by arguing that the Petitioner has waived appellate review of this issue by not raising it in either his original or amended petition for post-conviction relief. In the alternative, the State argues that the Petitioner has failed to show that he was prejudiced by the introduction of the information. We agree.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the <u>Strickland</u> test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; <u>see also</u> <u>Goad</u>, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

As an initial matter, we agree with the State that the issue the Petitioner raises on appeal was not included in his original or amended petitions for post-conviction relief, and, thus, is waived. The only mention of this issue was during the Petitioner's oft-times vague and rambling testimony, when he complained that the jury instructions, which were handed out at the start of trial and which trial counsel did not challenge pretrial, made the jury predisposed to find him guilty:

> Q.     You take issue with some of the Judge's instructions to the jury?
>
> A.     Right.
>
> Q.     Okay. Do you know if [trial counsel] challenged those instructions prior to trial?
>
> A.     No, he didn't challenge them prior to trial. The trial, it was already started. The instructions, they were already passed out to the jury members, so they had already pre heard them - - I mean, reviewed them and was able to see everything about me before he even brought up any type of issues.
>
> So, I mean, as far as 404(b), it was already violated. He didn't - - he didn't not one time bring up the 404(b). He just was talking in just regular terms, like can we - - can we - - can we do this, can we do that, but he wasn't talking in - - he wasn't talking in terms where it would be substantial to the Courts.
>
> Q.     He wasn't using legal terms?
>
> A.     Right.
>
> Q.     How did you think that those jury instructions affected the jury's perception of you?

A.    It made them - - it made them partial towards me because, I mean, when you have - - when you have someone on trial for certain - - for certain charges and then - -

Q.    Like what charge?

A.    If you have someone on trial for a robbery and they have a robbery in their background and you let the jury know that, they automatically will prejudge you just off the fact that they know you can commit a bad crime, without even looking at the totality of the evidence or the facts of the evidence that's at hand.  They automatically be partial towards you.  And just on the strength (sic) that they know that you're capable of doing something wrong.

We further agree with the State that, regardless of waiver, the Petitioner would not be entitled to relief on the basis of this issue.  As the State points out, this court determined in the direct appeal that any error that resulted from the trial court's having informed the jury about the Petitioner's prior aggravated robbery conviction was harmless given the strength of the State's case and the fact that the trial court issued a limiting instruction to the jury.  Racris Thomas, 2014 WL 5465864, at *12.  The Petitioner did not meet his burden of demonstrating that he was prejudiced by any alleged deficiency in counsel's not immediately noticing and objecting to the proposed jury instructions at the start of trial.  We, therefore, affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the Petitioner has not met his burden of showing that he was denied the effective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE